UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| S.T., and ELISIA JIMENEZ,<br><br>                    Plaintiffs,<br><br>        v.<br><br>YAKIMA SCHOOL DISTRICT #7,<br>and MATTHEW MEYER,<br><br>                    Defendants. | NO:  11-CV-3085-TOR<br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS'<br>MOTION FOR SUMMARY<br>JUDGMENT |

BEFORE THE COURT is Defendants' Motion for Summary Judgment (ECF No. 32).  This matter was heard with oral argument on February 12, 2013. Erica Shelley Nelson appeared on behalf of the Plaintiffs.  Patrick R. Moberg appeared on behalf of Defendants.  The Court has reviewed the briefing and the record and files herein, and is fully informed.

BACKGROUND

This action arises from alleged sexual harassment suffered by student S.T. at the hands of her teacher, Matthew Meyer.  S.T. seeks relief under 20 U.S.C.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1

§ 1681, et seq. ("Title IX") and 42 U.S.C. § 1983, as well as under several

Washington state law theories. Plaintiff S.T.'s mother, Elisa Jimenez, alleges a

state law loss of consortium claim. Presently before the Court is Defendants'

motion for summary judgment on Plaintiff S.T.'s federal claims.

FACTS[1]

On August 31, 2010, S.T. was thirteen years old and began her eighth grade

school year at Wilson Middle School ("WMS"). She was assigned to Defendant

Matthew Meyer ("Meyer") for math intervention class, a class he taught without a

teacher's assistant in the classroom. At the beginning of the school year, Meyer

allegedly singled out S.T. and told her she could sit wherever she wanted in the

classroom even though the rest of the students had assigned seating. ECF No. 66

at 3. Over the next one and a half months, S.T. alleges that Meyer made several

sexually suggestive comments and touched her in an inappropriate manner.

For purposes of summary judgment only, Defendants agree to the following

facts, as originally laid out in the complaint: (1) Meyer allegedly told S.T. she has

---

[1] In Defendants' reply brief, they assert a general objection to Plaintiffs' Statement

of Facts as using "argument, speculation and legal conclusion." ECF No. 73 at 1-2.

However, Defendants fail to identify any specific "facts" as inadmissible, and

therefore the Court declines to strike any portion of Plaintiffs' Statement of Facts.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 2

"really nice hair"; (2) He told her he liked her nails and stated they "would be a great color to catch the fish's attention;" (3) He rubbed her shoulders on at least three occasions; (4) He "pushed S.T.'s cell phone in her pants pocket and while doing so rubbed her thigh and smiled at her;" and (5) While looking at a picture of S.T. on his classroom computer, Meyer stated in front of the class, "Wow, S.T. has a hot smile." *See* ECF No. 33 at 2; ECF No. 1 at 2.

At some point, S.T. told her mother, Plaintiff Elisia Jimenez ("Jimenez"), about Meyer's behavior and Jimenez instructed her daughter to tell Meyer to stop. When Meyer rubbed her shoulders again, S.T. told Meyer to stop and pushed his hand away. However, S.T. told her mother that Meyer's behavior did not stop at that point. *See* ECF No. 71 at 8.

On October 15, 2010, Jimenez went to WMS to speak with Meyer. They had a meeting in the presence of Principal Ernesto Araiza ("Araiza"). Jimenez provided Araiza with a formal complaint, and told him that S.T. would not return to WMS until the school took appropriate remedial action against Meyer. At this time, Araiza suggested that S.T. be placed in the library during the school day for self-study or be released early to avoid contact with Meyer. Araiza also offered to place S.T. on a different "team" at WMS.[2] ECF No. 76, Ex. D at 38. Plaintiffs

---

[2] There were two separate "teams" of eighth grade students. Jimenez testified that according to S.T., Meyer was the only math intervention teacher on either "team,"

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 3

1    rejected all of these offers.  Jimenez permanently withdrew S.T. from WMS on

2    October 28, 2010.

3          Principal Araiza handed the investigation of S.T's complaint over to Steve

4    Cole, Assistant Superintendent of Human Resources at Yakima School District #7

5    ("School District").  On November 17, 2010, Cole sent a letter to Jimenez

6    acknowledging that "some of the interactions" with S.T. were "not appropriate"

7    but that the School District found that Meyer's actions did not rise to the level of

8    "misconduct."  ECF No. 36 at Ex. A.  The letter states that the School District

9    provided training to the staff regarding appropriate conduct in the context of

10   harassment and misconduct, and re-training for Meyer individually.  The letter did

11   not provide any alternative arrangement for S.T. to continue her education at

12   WMS.

13         S.T. alleges claims under Title IX against the School District and under

14   section 1983 against both the School District and Meyer for violations of her

15   constitutional rights.  She also brings Washington state law claims for negligent

16   and therefore switching to a different class to avoid contact with Meyer was not

17   possible.  ECF No. 76, Ex. D at 38-39.  However, Defendants have produced

18   evidence that there was another math intervention class on the other "team" that

19   was taught by a different teacher at the time of the events in question.  ECF No. 75

20   at Ex. A.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 4

1    supervision, negligent retention, and assault and battery.  Plaintiff Jimenez brings a

2    state law claim for loss of consortium against all Defendants.

3                                         DISCUSSION

4           The Court may grant summary judgment in favor of a moving party who

5    demonstrates "that there is no genuine dispute as to any material fact and that the

6    movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling

7    on a motion for summary judgment, the court must only consider admissible

8    evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).  The

9    party moving for summary judgment bears the initial burden of showing the

10   absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

11   317, 323 (1986).  The burden then shifts to the non-moving party to identify

12   specific facts showing there is a genuine issue of material fact.  *See Anderson v.*

13   *Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla

14   of evidence in support of the plaintiff's position will be insufficient; there must be

15   evidence on which the jury could reasonably find for the plaintiff."  *Id*. at 252.

16   For purposes of summary judgment, a fact is "material" if it might affect the

17   outcome of the suit under the governing law.  *Id*. at 248.  Further, a material fact is

18   "genuine" only where the evidence is such that a reasonable jury could find in

19   favor of the non-moving party.  *Id*.  The Court views the facts, and all rational

20

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 5

1    inferences therefrom, in the light most favorable to the non-moving party.  *Scott v.*

2    *Harris*, 550 U.S. 372, 378 (2007).

3    **A. Plaintiffs' § 1983 Claims**

4        A cause of action pursuant to 42 U.S.C. § 1983 may be maintained "against

5    any person acting under the color of law who deprives another 'of any rights,

6    privileges, or immunities secured by the Constitution and laws' of the United

7    States."  *Southern Cal. Gas Co., v. City of Santa Ana*, 336 F.3d 885 (9th Cir. 2003)

8    (citing 42 U.S.C. § 1983).  The rights guaranteed by § 1983 are "liberally and

9    beneficently construed."  *Dennis v. Higgins*, 498 U.S. 439, 443 (1991).  Plaintiffs

10   allege § 1983 claims against both the Defendant School District, and Defendant

11   Meyer individually.  The Court will address each of these claims in turn.

12       1.  Defendant School District

13       The Supreme Court has held that local governments are "persons" who may

14   be subject to suits under section 1983.  *Monell v. Department of Social Servs.,* 436

15   U.S. 658, 690 (1978).  A municipality, however, may only be held liable for

16   constitutional violations resulting from actions undertaken pursuant to an "official

17   municipal policy."  *Id.* at 691.  As the Supreme Court articulated in *Monell,* the

18   purpose of the "official municipal policy" requirement is to prevent municipalities

19   from being held vicariously liable for unconstitutional acts of their employees

20   under the doctrine of respondeat superior.  *Id.; Pembaur v. City of Cincinnati,* 475

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 6

1  U.S. 469, 478–79 (1986); *Bd. of Cnty. Comm'ns of Bryan Cnty. v. Brown,* 520 U.S.

2  397, 403 (1997).  Thus, the "official municipal policy" requirement

3  "distinguish[es] acts of the *municipality* from acts of *employees* of the

4  municipality, and thereby make[s] clear that municipal liability is limited to action

5  for which the municipality is actually responsible."  *Pembaur,* 475 U.S. 469, 479–

6  80 (1986) (emphasis in original) (footnote omitted).  To prevail on a municipal

7  liability claim, a plaintiff must show (1) plaintiff's constitutional rights were

8  violated, (2) the municipality had customs or policies in place at the time that

9  amounted to deliberate indifference, and (3) those customs or policies were the

10  moving force behind the violation of rights.  *See Estate of Amos ex. rel. Amos v.*

11  *City of Page,* 257 F.3d 1086, 1094 (9th Cir. 2001).

12    The Ninth Circuit recognizes four categories of "official municipal policy"

13  sufficient to establish municipal liability under *Monell:* (1) action pursuant to an

14  express policy or longstanding practice or custom; (2) action by a final

15  policymaker acting in his or her official policymaking capacity; (3) ratification of

16  an employee's action by a final policymaker; and (4) a failure to adequately train

17  employees with deliberate indifference to the consequences.  *Christie v. Iopa,* 176

18  F.3d 1231, 1235–40 (9th Cir.1999).

19    Here, Plaintiffs only argue under the first category of "official municipal

20  policy" that the School District had a custom of ignoring or minimizing Meyer's

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 7

1   prior acts of sexual harassment.  To support their argument, Plaintiffs first point

2   out that the School District knew of prior "inappropriate" actions taken by Meyer

3   against female students.  The record shows Principal Araiza once told Meyer to

4   stop hugging students, both male and female, at the end of the school year.  ECF

5   No. 76, Ex. B. at 9-10.  Additionally, Assistant Principal Gonzales told Meyer to

6   stop giving rides to female softball athletes in his personal vehicle.[3]  ECF No. 76,

7   Ex. B. at 11.  Plaintiffs also point to the letter the School District sent in regard to

8   its investigation, arguing that it minimized S.T's complaint when it stated

9   "[a]lthough we believe some of the interactions with your daughter were not

10  appropriate or conducive to a healthy learning environment, we do not believe that

11  the interactions rose to the level of misconduct or violation of the law."  ECF No.

12  36 at Ex. A.

13          Defendants argue these prior instances by one teacher are insufficient to

14  establish a longstanding or widespread custom of ignoring sexual harassment of

15  students.  The Court agrees.  With regard to Meyer's alleged prior inappropriate

16  actions, there is no evidence that a student or parent complained to a School

17

18

---

19  [3] For the purposes of summary judgment only, the Court finds it unnecessary to

20  consider proffered evidence of Meyer's marriage to a former softball player.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 8

District official or that the School District ignored or minimized such a complaint.[4]

Instead, the record shows the School District has an explicit policy prohibiting

sexual harassment and follows a detailed set of procedures when it receives a

complaint of student-teacher misconduct.  *See* ECF No. 37 Ex. B.  In accordance

with these procedures, upon receipt of S.T.'s complaint, the School District

initiated an investigation which was handled by School District Assistant

Superintendent Cole.  The undisputed facts show that Plaintiffs declined to

participate in the investigation or, more generally, the School District's complaint

procedures, which included a hearing and an appeal process.  Thus, Plaintiffs fail

to establish a genuine issue of fact that the School District had an "express policy

or longstanding practice" of ignoring or minimizing sexual harassment of students.

Summary judgment is granted to Defendant School District on the § 1983 claim.

     2.  <u>Defendant Meyer</u>

     S.T. also asserts a § 1983 claim for sexual harassment against Meyer,

alleging that he violated her Fourteenth Amendment equal protection right to be

---

[4] In his deposition, Vice Principal Gonzales testified that one female softball player
told him that Meyer "creeped her out," but not until several years after she quit the
softball team.  ECF No. 76, Ex. C at 34.  At summary judgment, however, the
Court disregards this statement as inadmissible hearsay.  *See Orr*, 285 F.3d at 773.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 9

free from sexual harassment in an educational setting.[5]  Meyer argues he did not violate this right or, in the alternative, that he is entitled to qualified immunity.

Sexual harassment by a public official in an educational setting violates the Equal Protection Clause and is cognizable under section 1983.  *Oona R.-S. . v. McCaffrey*, 143 F.3d 473, 476 (9th Cir. 1998).  Under this theory, a plaintiff must show that the teacher was a state actor, he harassed the student because of her sex, and that the harassment was sufficiently severe or pervasive to interfere unreasonably with her educational activities. *See Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 701 (4th Cir. 2007); *Walsh v. Tehachapi Unified Sch. Dist.*, 827 F. Supp. 2d 1107, 1118 (E.D. Cal. 2011).

### a.  Severe or Pervasive

For the purposes of summary judgment, the parties do not appear to dispute that Meyer was a state actor or that he harassed S.T. because of her sex.  Instead, Defendants rely solely on the argument that Meyer's alleged actions were not

---

[5] In her Complaint, S.T. alleged Meyer violated her right to an education and her right to be free from sex discrimination.  In her responsive motion, however, S.T. only claims her right to be free from sex discrimination was violated.  Therefore, the Court will only address the latter.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 10

sufficiently severe or pervasive to unreasonably interfere with S.T.'s education as a matter of law.

Making a "severe or pervasive" determination in the educational context entails examining the totality of the circumstances, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with" the victim's academic performance. *Hayut v. State Univ. of New York*, 352 F.3d 733, 745 (2d Cir. 2003) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)); *see also Jennings*, 482 F.3d at 701 (finding coach's persistent talk of his players' sex lives almost every day or every other day, combined with two instances of direct verbal sexual harassment toward the plaintiff that caused her humiliation and to quit the soccer team, was sufficiently severe or pervasive to unreasonably interfere with the plaintiff's ability to play soccer).  While the effect on a victim's psychological well-being is relevant to the subjective component in the analysis, its presence or absence is not dispositive on the issue of severity since "no single factor is required." *Hayut*, 352 F.3d at 745.  Because the inquiry is fact-specific, whether a teacher's sexual harassment rose to the level of severe and pervasive is often "best left for trial." *Id*.

Defendants analogize the facts of this case to the "banter" and "gossip" found in *Walsh*.  ECF No. 34 at 10.  In *Walsh*, several different teachers made

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 11

separate comments about a homosexual student, for example referring to him as "fruity" and suggesting he was "in need of help" because of his sexual orientation. *Walsh*, 827 F. Supp. 2d at 1112-13. The court looked at each teacher's actions separately and found that, although offensive, each teacher's isolated comment did not rise to the level of "severe and pervasive," the level necessary to support *individual* section 1983 liability. *Id* at 1118-19 (dismissing the § 1983 claims against each of the teachers who made the remarks on a 12(b)(6) motion).

The Court finds the circumstances of this case rise beyond the offensive "gossip" found in *Walsh*. According to the facts before the Court for purposes of summary judgment and viewing them in a light most favorable to S.T., a thirty six year old male teacher engaged in repeated acts of unwelcome touching and verbal harassment of a thirteen year old female student. Meyer rubbed S.T.'s shoulders on at least three occasions. He "pushed S.T.'s cell phone in her pants pocket and while doing so rubbed her thigh and smiled at her." Meyer told S.T. that her nails "would be a great color to catch the fish's attention" and later stated in front of the whole class, "Wow, S.T. has a hot smile." Collectively, a rational trier of fact could view Meyer's actions as "physically threatening or humiliating" rather than mere offensive utterances. *See Hayut*, 352 F.3d at 745. The Court also recognizes the relatively short timeframe, and thus higher frequency, of the alleged behavior.

S.T. started school at the end of August and by October 15, 2010, only a month

and a half later, she filed her complaint with the school.

Moreover, while not dispositive of the issue, there is evidence that S.T.'s

mental well-being was negatively affected. She allegedly sought mental health

counseling because of the "sadness, humiliation and embarrassment" she felt. ECF

No. 72 at 2; *see also Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292

(1998)(observing that "a student suffers extraordinary harm when subjected to

sexual harassment and abuse by a teacher, and that the teacher's conduct is

reprehensible and undermines the basic purposes of the educational system."). As

a consequence of Meyer's conduct, S.T. alleges she felt forced to withdraw from

WMS in order to preclude any further contact with Meyer. ECF No. 71 at 12.

Viewing the totality of the circumstances in the light most favorable to S.T., the

Court finds that a rational trier of fact could conclude that Meyer's actions were

sufficiently severe or pervasive to unreasonably interfere with S.T.'s educational

activities.

### b. Qualified Immunity

Meyer argues that the contours of a student's right to be free from sexual

harassment were not clearly established at the time of the alleged violation, and he

is therefore entitled to qualified immunity. The doctrine of qualified immunity

protects government officials unless their conduct violates "clearly established

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 13

statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, (1982).  In order to analyze a claim of qualified immunity, a court must determine whether, in the light most favorable to the plaintiff, the defendant's conduct violated a constitutional right, and whether the right was clearly established at the time of the alleged misconduct.  *See Saucier v. Katz,* 533 U.S. 194, 201 (2001), *receded from in Pearson v. Callahan,* 555 U.S. 223, 236 (2009) (holding that it is within the sound discretion of the district court to decide which of the two prongs should be addressed first in light of the circumstances in the particular case).

A public official is not entitled to qualified immunity if "the contours of the right violated are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *United States v. Lanier,* 520 U.S. 259, 270 (1997) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).  Ordinarily, courts look to prior decisional law to determine whether the "contours of the right" are defined at an appropriate level of specificity.  *Schwenk v. Hartford,* 204 F.3d 1187, 1195 (9th Cir. 2000).  "This does not mean, however, that the 'very action in question must have previously been held unlawful.'  Instead, qualified immunity is inappropriate where the preexisting law was sufficient to provide the defendant with 'fair warning' that his conduct was unlawful." *Schwenk*, 204 F.3d at 1197 (internal citations omitted).

In the Ninth Circuit, a student's right to be free from any purposeful sexual harassment involving inappropriate touching by a teacher has been held clearly established since at least 1998. *See Oona R.-S.*, 143 F.3d at 476. Courts routinely deny qualified immunity to teachers who allegedly touch a student in a sexually inappropriate manner. *See id.* (affirming denial of qualified immunity to teacher who "allegedly fondled, kissed, straddled and *otherwise inappropriately touched*" student) (emphasis added); *Sh.A. v. Tucumcari Mun. Sch.,* 321 F.3d 1285, 1289 (10th Cir. 2003) (upholding denial of qualified immunity to teacher who put his hand down the inside of the plaintiffs' shirts and rubbed their chests and backs, and put his hand under their shorts and rubbed their legs); *Morlock v. W. Cent. Educ. Dist.*, 46 F. Supp. 2d 892, 898 (D. Minn. 1999) (denying qualified immunity to teacher who allegedly touched student inappropriately including placing his hand on her buttocks and thigh, putting his arms around her and touching her breast, rubbing and pushing his pelvis against her buttocks, and sitting next to her and placing his hand on her thigh.).

As discussed above, there is a genuine issue of fact as to whether Meyer violated S.T.'s right to be free from sexual harassment under the Equal Protection Clause. Moreover, the parameters of this specific right—a student's right to be free from sexual harassment by a teacher involving inappropriate touching—are clearly established in the Ninth Circuit. *See Oona R.-S.*, 143 F.3d at 476. At the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 15

1  very least, this preexisting case law was sufficient to put Defendant Meyer on

2  notice that inappropriate touching by a teacher was unlawful.  *See Schwenk*, 204

3  F.3d at 1197.  The Court finds that a reasonable teacher would understand that

4  rubbing a thirteen year old girl's shoulders on at least three occasions, rubbing her

5  upper thigh while smiling at her, stating she has a "hot" smile in front of the class,

6  and complimenting her hair and nails, would violate a student's right to be free

7  from sexual harassment.  Thus, Defendant Meyer is not entitled to qualified

8  immunity.

9  **B. Plaintiff's Title IX Claim Against the School District**

10      Title IX provides that no person "shall, on the basis of sex . . . be denied the

11  benefits of, or be subjected to discrimination under any education program or

12  activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  The

13  Supreme Court has held that "a damages remedy will not lie under Title IX unless

14  an official who at a minimum has authority to address the alleged discrimination

15  and to institute corrective measures on the recipient's behalf has actual knowledge

16  of discrimination in the recipient's programs and fails to adequately respond."  *See*

17  *Gebser*, 524 U.S. at 290 ("the express remedial scheme under Title IX is

18  predicated upon notice to an 'appropriate person' and an opportunity to rectify any

19  violation").  After a thorough analysis of the purpose and history of Title IX, the

20  Supreme Court found it would "frustrate the purpose" of Title IX to allow a

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 16

student to recover damages against a school district for a teacher's sexual

harassment based on the principles of respondeat superior or constructive notice,

without actual notice to the requisite school district official. *Id.* at 285. Rather, in

order to state a claim under Title IX, the Court found that a student-plaintiff must

prove that an appropriate official had actual knowledge of a teacher's sexual

harassment and acted with deliberate indifference to the misconduct. *See id*. at

288-93.

Here, the parties do not dispute that the School District receives federal

education funding for Title IX purposes. Nor do they appear to dispute that the

school district officials to whom S.T. reported her complaint had the authority to

address the alleged discrimination and take corrective action. Therefore, in order

to survive summary judgment Plaintiffs must establish a genuine issue of fact as to

whether an appropriate official at the School District had (1) actual notice of

misconduct by Meyer that created a substantial risk to its students, and (2)

responded with deliberate indifference to the misconduct.[6]

---

[6] The parties devote a substantial portion of their briefing to whether S.T. must

show that she was subject to "severe and pervasive" sexual harassment to have an

actionable Title IX claim. The Court finds it unnecessary to address this argument

in light of Plaintiffs' failure to establish deliberate indifference.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 17

The Ninth Circuit has not yet resolved the precise boundaries of the "actual notice" component of a Title IX claim.  Certain courts have found the standard is met "when an appropriate school official has actual knowledge of a substantial risk of abuse to students based on prior complaints."  *See e.g., Doe A. v. Green*, 298 F. Supp. 2d 1025, 1032 (D. Nev. 2004) (quotation omitted); *see also Gordon v. Ottumwa Cnty. Sch. Dist.,* 115 F. Supp. 2d 1077, 1082 (S.D. Iowa 2000) (actual notice "does not set the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student.") (internal citation omitted).  In other words, the "test is whether the appropriate official possessed enough knowledge of the harassment that he or she reasonably could have responded with remedial measures to address the kind of harassment upon which plaintiff's legal claim is based."  *Roe v. Gustine Unified Sch. Dist.*, 678 F. Supp. 2d 1008, 1030 (E.D. Cal. 2009).

Plaintiffs argue that the School District knew of two [7] prior instances of "inappropriate conduct" by Meyer and therefore had actual notice of a substantial

---

[7]  Again, the Court does not consider Meyer's marriage to an alleged former student.  Even if it did, "[s]imply knowing that a teacher married a woman formerly his student, without actual knowledge of misconduct, does not suffice to hold a school district liable under Title IX."  *Hansen v. Bd. of Trustees of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 606 (7th Cir. 2008).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 18

1    risk of sexual harassment to students prior to S.T.'s complaint.  The Court

2    disagrees.  Plaintiffs offer no evidence that any student, parent, or teacher reported

3    an official complaint to a School District official of any sexual misconduct by

4    Meyer sufficient to indicate that he posed a substantial risk of abuse to students.

5    *See Green*, 298 F. Supp. 2d at 1032.  The School District's informal conversations

6    with Meyer about rides given to female softball players and hugs given to students

7    at the end of the school year were not motivated by any complaint, nor was there

8    any indication to the School District that these interactions were sexually

9    inappropriate.  Therefore, to the extent that Plaintiffs argue the School District had

10   actual notice of sexual harassment prior to the day it received S.T.'s complaint;

11   Plaintiffs fail to create a triable issue of fact.

12          However, once the School District received S.T.'s complaint on October 15,

13   2010, Plaintiff provided actual notice to an official with authority to address the

14   alleged discrimination and institute remedial measures.  *See Ross v. Corp. of*

15   *Mercer Univ.*, 506 F. Supp. 2d 1325, 1347-48 (M.D. Ga. 2007)("it is generally

16   accepted that the knowledge must encompass either actual notice of the precise

17   instance of abuse that gave rise to the case at hand or actual knowledge of at least a

18   significant risk of sexual abuse.").  As a result, to the extent that Plaintiffs' Title IX

19   claim is premised on the School District's failure to take adequate action *following*

20   *that notice*, Plaintiffs meet the actual notice element.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 19

1    However, regardless of whether the School District had "actual notice" of

2    misconduct by Meyer after receiving S.T.'s complaint, Plaintiffs fail to establish a

3    genuine issue of fact as to whether the School District responded with deliberate

4    indifference to the sexual harassment.  Defendants have produced evidence that

5    upon learning of the allegations it took prompt steps to investigate Meyer's

6    conduct.  *See* ECF No. 36.  As discussed above, the School District has a set of

7    policies and procedures it follows when it receives complaints of sexual

8    harassment, which Plaintiffs conceded were followed after receiving S.T.'s

9    complaint.  *See Green*, 298 F. Supp. 2d at 1035 ("If an institution takes timely and

10   reasonable measures to end the harassment, it is not liable under Title IX for prior

11   harassment.") (quotation and citation omitted).  At oral argument, Plaintiffs further

12   conceded that they chose not to avail themselves of the School District's

13   procedures for a hearing and appeal after the initial finding regarding Meyer's

14   conduct.  Even in the light most favorable to S.T., there is no evidence that the

15   School District made "an official decision . . . not to remedy the violation," or that

16   it effectively "cause[d]" S.T. to suffer the alleged sexual harassment.  *See Gebser*,

17   524 U.S. at 291.

18   **C. State Law Claims**

19       Defendants also seek dismissal of Plaintiffs' remaining state law claims.

20   Defendants argue that because they are entitled to summary judgment on all of the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 20

federal claims, the Court should decline to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). Because the Court has not dismissed the federal § 1983 claim against Meyer, this argument is moot.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Defendants' Motion for Summary Judgment, ECF No. 32, is **GRANTED** as to the § 1983 and Title IX claims against Defendant Yakima School District #7, and **DENIED** with respect to the § 1983 claim against Defendant Matthew Meyer.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** March 5, 2013.



THOMAS O. RICE
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 21